(January 28, 1910.)

SNOWY PEAK MINING COMPANY, Appellant, v. TAMARACK AND CHESAPEAK MINING COMPANY, Respondent.

[107 Pac. 60.]

MINING CLAIMS—NOTICE OF LOCATION—SUFFICIENCY—APPLICATION FOR PATENT—ADVERSE—PLEADINGS—AMENDMENT—FINDINGS.

1. Where application to amend a pleading to conform to the proof is made before the findings and decree are signed by the judge, such application is not too late, and should not for that reason be denied.

2. Where application to amend a pleading to conform to the proof is filed, it is not error for the trial court to disallow such proposed amendment where there is no proof to support the same.

3. A forfeiture of a mining claim does not occur by the mere failure to perform the assessment work for any particular year. To complete the forfeiture there must have been a relocation of such ground before a resumption of work. The right of the original location is terminated only by the entry of a new one, and resumption of work prior to the lawful inception of an intervening right prevents forfeiture.

4. In an adverse suit the plaintiff must recover upon the strength of his own title and not by reason of the weakness of the title of the applicant for patent; and the fact that a third person has made a subsequent location of all or a part of the territory covered by the location, for which patent is sought, will not avail the plaintiff in an adverse suit not based upon such subsequent location.

5. Evidence in this case examined and *held* to support the findings of the trial court.

6. If by any reasonable construction, in view of the surrounding circumstances, the language employed in the description will impart notice to subsequent locators, such notice of location is sufficient.

(Syllabus by the court.)

APPEAL from the District Court of the First Judicial District for Shoshone County. Hon. W. W. Woods, Judge.

An adverse suit upon application for patent. Judgment for defendant. *Affirmed.*

Henry P. Knight, and Franklin Pfirman, for Appellant.

This being an adverse suit, the burden to establish its case is upon the defendant the same as upon the plaintiff. (*Rosenthal v. Ives*, 2 Ida. 265, 12 Pac. 904, 15 Morr. Min. Rep. 324; *Jackson v. Roby*, 109 U. S. 440, 3 Sup. Ct. 301, 27 L. ed. 990; *Murray Hill M. & M. Co. v. Havenor*, 24 Utah, 73, 66 Pac. 762; *Lee Doon v. Tesh*, 68 Cal. 43, 6 Pac. 97, 8 Pac. 621; *McGinnis v. Egbert*, 8 Colo. 41, 5 Pac. 652; *Schultz v. Allyn* (Ariz.), 48 Pac. 960; *Upton v. Santa Rita Min. Co.* (N. M.), 89 Pac. 275.)

It is only where the ownership of contiguous claims is common that the work may be done upon one for the benefit of all so as to prevent a forfeiture. (U. S. Stat., sec. 2324; Martin's Min. Law, 174; *Black Lead Lode Extension*, 32 L. D. 595; *Copper Glance Lode*, 29 L. D. 542; *Golden Crown Lode*, 32 L. D. 217.)

Mining claims must be contiguous to allow work done on one to count for the other. (*Gird v. Calif. Oil Co.,* 60 Fed. 531; *Royston v. Miller,* 76 Fed. 50; *Chambers v. Harrington,* 111 U. S. 350, 4 Sup. Ct. 428, 28 L. ed. 452; *Copper Glance Lode,* 29 L. D. 542.).

It is within the discretion of a court of equity to allow amendments of the pleadings at any stage of the case before the entry of a final decree. (*Havlick v. Davidson,* 15 Ida. 787, 100 Pac. 91, and cases cited.)

In actions to determine rights to the possession of land, one who is in possession under color of title or right may avail himself of an outstanding title as a defense, although he does not connect himself therewith. (15 Cyc. 65.) Weakness of plaintiff's title is a defense, as is also abandonment by plaintiff. (15 Cyc. 64.) In this character of action, each side is an actor, and defendant must show a clear right as against the government, and any evidence to show that he has not a right is admissible.

The court has found both the Monroe and Silent Friend to be valid claims. The question arises: How could the Silent Friend be a valid claim, if its discovery is within the limits of the Monroe? The findings would be and are absolutely contradictory. In such case it cannot be said that either finding is correct, or, at least, which is correct. (2 Spelling on New Trial, p. 601.)

John H. Wourms, and C. W. Beale, for Respondent.

Amendments after decision and before decree are not allowed. (*Claflin v. Bennett,* 51 Fed. 701; *Blair v. Harrison,* 57 Fed. 257, 6 C. C. A. 326.)

Mining claims are not open to relocation until the rights of a former locator have come to an end. (*Belk v. Meagher,* 104 U. S. 279, 26 L. ed. 735; *Brown v. Gurney,* 201 U. S. 184, 26 Sup. Ct. 509, 50 L. ed. 717; *Farrell v. Lockhart,* 210 U. S. 142, 28 Sup. Ct. 681, 52 L. ed. 994; *Lockhart v. Rollins,* 2 Ida. 540, 21 Pac. 413.)

The matter of the proposed amendment was immaterial and incompetent, in that the court was not authorized to and

could not in this suit try out any conflict between the Monroe and the Indus lode. So far as this suit is concerned, all adverse claims are waived excepting the alleged conflict between the Silent Friend and the Monroe. (Lindley on Mines, sec. 742; *Wight v. Dubois*, 21 Fed. 693.)

Resumption of work at any time prior to the lawful inception of an intervening right prevents forfeiture. (Lindley on Mines, sec. 651; *Oscamp v. Crystal River Mining Co.*, 58 Fed. 293, 7 C. C. A. 233.)

Where the witnesses appear and testify in a court of equity, and there is a substantial conflict in the evidence, the appellate court will not disturb the findings and judgment of the trial court. (*Stuart v. Hauser*, 9 Ida. 53, 72 Pac. 719; *Commercial Bank v. Lieuallen*, 5 Ida. 47, 46 Pac. 1020; *Doe v. Vallejo*, 29 Cal. 391; *Silva v. Pickard*, 14 Utah, 254, 47 Pac. 144, and cases cited; *Morrow v. Matthew*, 10 Ida. 423, 79 Pac. 196.)

STEWART, J.—On Mar. 14, 1907, the respondent, Tamarack and Chesapeak Min. Co., filed an application for patent in the local land office at Coeur d'Alene, Idaho, for the Monroe lode mining claim. Within the time prescribed by law the appellant filed an adverse suit pursuant to sec. 2326 of the Rev. Stat. of the United States, claiming title and the right to possession of the Silent Friend mining claim, a portion of which it was claimed was in conflict with the Monroe mining claim. The cause was tried to the district court and findings and judgment entered in favor of the respondent. A motion for a new trial was made and overruled, and this appeal is from the judgment and from the order overruling appellant's motion for a new trial.

It appears from the record that the testimony was concluded on Nov. 13, 1908; that on June 21, 1909, the court announced in open court that he would find for the defendant, and on the following day a stipulation was entered into, upon which the court made an order extending plaintiff's time to ninety days from entry of judgment to prepare, serve and file a bill of exceptions, and to thirty days from and

after judgment in which to serve and file affidavits to be used on motion for a new trial, and staying the judgment for a period of ninety days. Thereafter and on June 26, 1909, and before findings of fact and conclusions of law and the decree had been entered, the plaintiff filed a written motion for leave to amend its complaint to make the same conform, as claimed, to the evidence. The proposed amendment consisted in allegations alleging a forfeiture by the respondent of the Monroe lode mining claim by failing to perform the assessment work for the year 1898, and a relocation of the ground covered by the Monroe on Jan. 4, 1899, by one D. H. Brien as the Indus lode mining claim. The court declined to permit this proposed amendment and the ruling of the court is assigned as error upon this appeal.

Counsel for respondent contends that the court did not err in refusing to allow the amendment, first, for the reason that the amendment came too late; second, for the reason that as appellant contended that it was not necessary to plead a forfeiture, such amendment was immaterial; third, because it was immaterial whether the assessment work was done on the Monroe mining claim for the year 1898, because it appears that such assessment work was done and proof of labor filed for all years prior to 1898 and subsequent thereto; and fourth, for the reason that the location of the Silent Friend claim did not conflict with the Monroe claim; and fifth, if the Silent Friend claim did conflict with the Monroe claim at the time the Silent Friend was located, the Monroe claim was a valid, legal location and not subject to relocation as the Silent Friend, or any part of the Silent Friend, and that the failure to do the assessment work, even if not done on the Monroe claim for the year 1898, could not inure to the benefit of the Silent Friend, for the reason that the Silent Friend location being made subsequent to the Monroe was void as to that portion of the ground in conflict, because the same was not open to location at the time the Silent Friend location was made; and sixth, because any contest between the Monroe claim and the Indus claim could not be tried

in an adverse suit filed by the appellant under the claim of
title as the Silent Friend location.

The amendment proposed did not come too late, and should
not for that reason have been disallowed.   (Rev. Codes, sec.
4229; *Harrison et al. v. Russell & Co., ante,* p. 196, 105 Pac. 48,
and cases cited in that opinion.)   We think, however, the
court committed no error in disallowing such proposed amend-
ment.   It appears from the record that the Monroe mining
claim was located Aug. 12, 1889, and that the Silent Friend
mining claim was located Nov. 21, 1890; and even if it be
conceded that the assessment work was not done on the
Monroe mining claim for the year 1898, but was done each
year prior and subsequent thereto, the mere failure to do
the assessment work for that year would not inure to the
benefit of the Silent Friend location, as the Silent Friend
location would have been void as to the territory in conflict
at the time the same was made, and would not subsequently
have become a valid location by the mere failure of the prior
locator to perform such assessment work for any particular
year.   To complete forfeiture there must have been a reloca-
tion of such ground before a resumption of work.   The only
way the appellant could have acquired the right of possession
to such ground after forfeiture, even if there had been a
forfeiture, would have been by a relocation of such ground.
(*Swanson v. Kettler, ante,* p. 321, 105 Pac. 1059; *Belk v.
Meagher,* 104 U. S. 279, 26 L. ed. 735; *Farrell v. Lockhart,* 210
U. S. 142, 28 Sup. Ct. 681, 52 L. ed. 994.)

There is another reason why the amendment pleading for-
feiture could not have aided the plaintiff, and that is the
fact that the proof would not have supported such allega-
tions.   The amendment proposed, alleging that the ground
covered by the Monroe claim was relocated as the Indus on
Jan. 4, 1899, was immaterial and could not have aided the
plaintiff for two reasons: First, because the assessment work
was done for the benefit of the Monroe claim for all years
subsequent to the location and prior to Jan. 1, 1899, as the
court found, then such ground was not open to location on
Jan. 4, 1899, and the Indus location was void as to the area

in conflict; second, if the locators or owners of the Indus claim desired to adverse the respondent's application for patent, then they should have done so, and whether such location was valid or not could not aid the appellants in their adverse based upon the Silent Friend location.   The plaintiff must recover by reason of the Silent Friend location and not by reason of the fact that another location in the name of a third party, who was not an adverse plaintiff, had been made.   Neither could the plaintiff in an adverse suit, based upon the Silent Friend location, show a forfeiture of the Monroe by reason of the failure to do the assessment work for the year 1898 and because of such fact the ground was located as the Indus claim, because if such proof could be made in a case in which the plaintiff had no interest by reason of the fact that the Silent Friend location was void because made subsequent to the Monroe location and covering the same area, then an adverse suit would be converted into a mere protest against the issuing of a patent upon application by persons or parties who had no interest or could in no way be benefited by the judgment to be rendered in said case. (2 Lindley on Mines, sec. 758; *Wight v. Dubois,* 21 Fed. 693; 27 Cyc. 611; *Lockhart v. Farrell,* 31 Utah, 155, 86 Pac. 1077; *Milwaukee Gold Extraction Co. v. Gordon,* 37 Mont. 209, 95 Pac. 995; *Lozar v. Neill,* 37 Mont. 287, 96 Pac. 343.)

The court found, among other things, that the Monroe mining claim was situated in Placer Center mining district, county of Shoshone, state of Idaho, and is described in the official survey and field-notes thereof on file in the office of the United States surveyor general for the state of Idaho, as follows, to wit: (Here follows a description of the Monroe lode mining claim by metes and bounds as shown by Mineral Survey No. 2158 made upon application for patent.)

"That the said Monroe lode mining claim, as described in said official survey and the field-notes thereof, is situated entirely within the boundaries of said Monroe lode mining claim as located by D. H. Brien and Dennis Quinlan. . . . . That during each year since the discovery and location of said Monroe lode mining claim, excepting the years when relieved

from doing the work by the acts of Congress, there has been done and performed more than one hundred dollars' worth of work and labor on and for said Monroe lode mining claim by said locators, said defendant and its predecessors in interest, and that the said locators and predecessors in interest of said defendant have expended on said Monroe lode mining claim in work thereon more than five hundred dollars, and said defendant has expended in work and labor for the development of the said Monroe lode mining claim more than five hundred dollars; and that in the discovery and in the locating, marking, recording, holding and working of said Monroe lode mining claim, said defendant, its predecessors in interest and said locators have fully complied with all mining laws of the United States and of the territory and state of Idaho.''.

The court further found that the Silent Friend lode mining claim, located and marked upon the ground, was north of the Monroe lode mining claim as located and marked and bounded by D. H. Brien and Dennis Quinlan, and that the Silent Friend lode mining claim did not at the time of the discovery, marking and location thereof include or cover, and it has not at any time included or covered, any portion of the ground or premises included within the boundaries of the said Monroe mining claim, but, on the contrary, the Silent Friend lode mining claim was and is and at all times has been situated north of the said Monroe mining claim and never covered or included any portion of the alleged conflict area claimed by the plaintiff in this suit.

It is the contention of the appellant that the evidence does not support these findings, and it is principally upon this contention that counsel rely for a reversal of this case. The evidence offered by the respective parties covers 219 pages of the printed transcript, and to review the same in detail would require this opinion to be unduly lengthy and could in the end serve no real purpose. Under the assignment of error the only inquiry which concerns this court is: Is there sufficient evidence to support the findings of the trial court? This court will not reverse a cause because on the evidence, as a

whole, it might have reached a different conclusion from that arrived at by the trial court, if the question were submitted to this court as an original proposition, but will review the evidence only for the purpose of ascertaining whether there is sufficient evidence in the record to support such findings; and, if in reviewing such evidence, the court finds a substantial conflict and that there is evidence which supports the findings of the court, the judgment will be affirmed.

It may be conceded at the threshold of an examination of the evidence that there is much conflict in the same and that it would be an impossible task to reconcile such conflict. It would seem from the argument of the respective counsel, based upon the evidence tending to support their respective theories, that there has been a race between the owners of the Monroe and the Silent Friend mining claims to shift and change such locations so as to get on the pay streak, and that their success depends wholly upon what view this court may take of the evidence as tending to support the respective contentions of counsel. According to the claim made by the respondent, the Silent Friend claim is north of the Monroe, the south side line of the Silent Friend being the north side line of the Monroe, and the Monroe claim as located by the survey for patent embraces the same area as was embraced within the original location notice of the Monroe; and by reason of such location there is no conflict in the surface area. On the other hand, appellant contends that while the Silent Friend claim was located north of the Monroe as originally located, the survey for patent of the Monroe claim shifts such location to the north so as to conflict and embrace within its boundaries certain parts of the Silent Friend location. It may be conceded that there is evidence in the record tending to support these respective contentions. The court found that the location of the Monroe mining claim as surveyed for patent was the same as originally located and entirely within the boundaries as shown by the location notice, and that the Silent Friend was north and not in conflict therewith.

We have carefully gone through the evidence in this case and, as stated, find much conflict in the same, but do find much evidence supporting the findings of the trial court and the contention as made by the respondent.   It appears from the evidence that the survey for patent located the Monroe claim within the boundaries of the same as described in the original notice of location, and that the surveyor who made such survey had pointed out to him and took as his starting point the original discovery shaft of the Monroe; and that the corners of the Monroe as surveyed were near the original location corners and within the exterior boundaries as originally located.   This evidence was given by witnesses who were familar with marks and objects, and made with reference to the original location of the Monroe, and qualified such witnesses to determine whether the Monroe as surveyed for patent covered the same area as the original location notice. If it did, and the Silent Friend was located subsequent to the Monroe location and lay north and outside of the boundaries of the Monroe, then there could have been no conflict in the area.   Dr. Brien was one of the locators of both the Monroe and Silent Friend claims, and testifies that at the time the Silent Friend claim was located the Monroe was staked upon the ground so that the corners were known, and that he put up some of the Monroe corners and knew where they were located, and that the Silent Friend claim was located with its south side line up against the north side line of the Monroe, from which it clearly appears that as originally located there was no conflict between the two locations.   If, then, the survey for patent fixed the Monroe claim upon the ground within the boundaries as the Monroe claim, as originally staked, then the findings of the trial court with reference to the location upon the ground of the Monroe claim are certainly correct; and as stated there is much evidence which supports this finding of the trial court.

Counsel for appellant also contends that the evidence does not support the finding of the trial court as to the assessment work having been done upon the Monroe for the year 1898. We think there is sufficient evidence to support this finding,

but even if there were not, the appellant is not in a position to complain, for the court finds that there was no conflict between the Silent Friend and the Monroe locations as found and determined by the trial court.

Counsel for appellant contends that the notice of location of the Monroe claim did not tie the location to any fixed or permanent monument, and for that reason it was not sufficient in and of itself to fix its location, and the court was not justified by the evidence in locating such claim as determined by its findings; and in support of this contention cites *Morrison v. Regan*, 8 Ida. 291, 67 Pac. 955, and *Bismark Min. Co. v. North Sunbeam Co.*, 14 Ida. 516, 95 Pac. 14. In the latter case this court quoted with approval from the case of *Farmington Gold Min. Co. v. Rhymney Gold & Copper Co.*, 20 Utah, 363, 77 Am. St. 913, 58 Pac. 832, as follows: "If, by any reasonable construction, in view of the surrounding circumstances, the language employed in the description will impart notice to subsequent locators, it is sufficient."

We think the notice of location in this case, when taken with the oral evidence, was sufficient to justify the court in his findings as to the location of the Monroe claim. Especially should this rule prevail, under the peculiar circumstances of this case, by reason of the fact that the Monroe claim was located by D. H. Brien and Dennis Quinlan and that the same parties were the locators of the Silent Friend, now owned by the plaintiff and appellant, and in which company the said D. H. Brien, one of the locators of both claims, is a large owner. This same D. H. Brien, who located the Silent Friend claim, was connected in an official way with the Monroe location from the time of its location up to 1906, and it was his duty as an official and manager of the respondent company to see that the stakes and monuments were retained in place so as to notify subsequent locators of such location; and we do not believe that the appellant company, of which said D. H. Brien is a part owner, is now in a position to claim that the original location notice of the Monroe was insufficient. In fact, the evidence in this case does not show that the claim could not be located upon the ground, from the

description claimed in the notice, and as was said in effect by the supreme court of Montana in *Dillon v. Bayliss,* 11 Mont. 171, 27 Pac. 725, if the court cannot say from the inspection of the notice that the description is an impossible or uncertain one, it may be admitted in evidence, but is not conclusive, and may be subjected to the attacks of its adversary; but in this case it does not appear from the evidence that the claim could not be found upon the ground as described in the notice of location.

Counsel for appellant before findings were made by the court requested the court to make certain findings, and this request was refused, and the action of the court is assigned as error. The first requested finding was with reference to the defendant's interest in the Chesapeak and Tamarack fraction lodes and their location; and the second was to the effect that no assessment work was done within the exterior limits and boundaries of the Monroe claim during the year 1898. The court did not err in refusing to make these requested findings. In the first place, it was of no consequence whatever as to the respondent's specific interest in the Chesapeak and Tamarack fraction, and such fact could in no way have changed the location of the Monroe lode. The locations of the Chesapeak and Tamarack with reference to the Monroe lode were unimportant, except in so far as they might have aided the court in determining the location of the Monroe lode, but the failure of the court to find upon such question would not be reversible error where the court did find the location of the Monroe lode. As to the second requested finding, the court did find that during each year since the discovery and location of the Monroe claim, except the years when relieved from doing the work by acts of Congress, there has been done and performed more than $100 worth of work and labor on and for said Monroe mining claim and for the development of the same. It is now well settled that work done outside of the exterior boundaries of a mining claim, if done for the purpose and as a means of developing the same, is as available as assessment work as if done within the boundaries, as assessment work may be done within the

boundaries or without the boundaries, and be a compliance with the law if it is done for the benefit of, and for the development of, such claim. (2 Lindley on Mines, sec. 631; 1 Snyder on Mines, secs. 479, 480.)

Counsel for appellant has specified a number of assignments of error alleged to have occurred during the trial, in the admissibility and rejection of evidence. We have carefully examined each of these assignments and do not find that the court committed any error. The judgment is *affirmed.* Costs awarded to the *respondent.*

Sullivan, C. J., concurs in conclusion.

AILSHIE, J., Concurring.—I desire to qualify my concurrence in the opinion in this case with reference to the holding that the amendment proposed did not come too late. This statement is probably correct in some cases, but not as a rule. As a general rule, amendments proposed under sec. 4228, Rev. Codes, should be submitted before the close of the trial and the submission of the case. If the amendment is proposed under the provisions of sec. 4229, Rev. Codes, at whatever time it may come, a showing must be made sufficient to set in action the discretion of the court to allow the party to amend. That section of the statute was adopted for the purpose of relieving a party from a mistake, an inadvertence, or surprise, or excusable neglect. It is not a statute conferring a right as a matter of course, but is a statute which sets in operation the discretion of the court. If on the other hand, the amendment is offered under the provisions of sec. 4226, Rev. Codes, in order to make the pleadings conform to the proofs, then the amendment may be made at any time before judgment.

In the case at bar the proposed amendment presented an entirely separate and independent defense and a new issue. Such an amendment came too late after the cause had been tried and submitted to the court, and the court had announced from the bench his conclusions on the case. This is especially true where the party failed to accompany his

amendment with any showing that he had been misled, or deceived, or surprised, or mistaken as to his rights or the facts in the case, or in any way brought himself within the purview of sec. 4229 of the code.

### ON PETITION FOR REHEARING.
(February 23, 1910.)

PER CURIAM.—A petition for a rehearing has been filed in this case, in which counsel very earnestly contend that this court should review the evidence and reverse the case if in the opinion of this court the appellant should have recovered at the trial in the district court. In other words, counsel argue that this is an equity action, and that this court is not bound by the rule incorporated in sec. 4824 of the Rev. Codes, that if there is a substantial conflict in the evidence the judgment will not be reversed.

It seems to be the argument of counsel that sec. 4824, *supra,* does not apply to equity cases, and that this court has never so applied said section since its adoption by the legislature in 1907. Before taking up this question counsel admit in their petition that "there may be some evidence which taken alone slightly tends to support this finding," and "Undoubtedly the evidence in this case is conflicting in certain particulars," but argue that the evidence, as a whole, does not support the findings of the court.

In the original opinion this court said: "This court will not reverse a cause because on the evidence as a whole it might have reached a different conclusion from that arrived at by the trial court, if the question were submitted to this court as an original proposition, but will review the evidence only for the purpose of ascertaining whether there is sufficient evidence in the record to support such findings; and, if in reviewing such evidence the court finds a substantial conflict and that there is evidence which supports the findings of the court, the judgment will be affirmed." This is the correct rule, as we understand it, as applied by this court, both before and since the amendment made to sec. 4324 by the legislature in 1907.

In the case of *Later v. Haywood,* 15 Ida. 718, 99 Pac. 828, this court referred to the earlier cases dealing with this question, and said:

"It must be admitted, on the other hand, that the preponderance of evidence is with the appellants, but we cannot reverse the judgment simply because the preponderance of the evidence is against the judgment. The rule is firmly established in this court that it will not reverse a judgment where there is a substantial conflict in the evidence, and this rule applies as well in equity cases heard upon oral testimony as in law cases. (*Stuart v. Hauser,* 9 Ida. 53, 72 Pac. 719; *Morrow v. Mathews,* 10 Ida. 433, 79 Pac. 196; *Robbins v. Porter,* 12 Ida. 738, 88 Pac. 86.)"

In the case of *Bowers v. Cottrell,* an equity action and decided by this court since sec. 4824, *supra,* was amended, this court held: "Where there is substantial evidence to support the findings of the court, they will not be set aside on the ground of insufficiency of the evidence." Again, in the case of *Swanson v. Kettler, ante,* p. 321, 105 Pac. 1065, in the opinion on petition for rehearing, this court, through Justice Ailshie, said: "It is true that the evidence is conflicting on this issue and is indeed unsatisfactory, and if it were an original proposition before this court, we might find differently from the finding of the trial court, but under the uniform rule of this court, as well as the command of the statute (sec. 4824, Rev. Codes), we are impelled to sustain the finding of the trial court. There is a substantial conflict in the evidence, and the trial court felt justified in believing the evidence to the effect that the Malta No. 1 and the Emma No. 2 covered the same ground and were identical." This applies directly to the contention made by appellant in the petition for a rehearing.

An examination of the evidence in this case, we think, shows a conflict, and while it is unsatisfactory and might have led this court to reach a different conclusion, were the case submitted to this court originally, still we find sufficient and substantial evidence to support the findings of the trial court. Of course *upon an appeal in an equity case, if there is no*

substantial evidence which supports the findings of the trial court, the judgment will be reversed; but where the evidence is oral or partly oral and partly written, and there is a conflict in the evidence, and the record contains substantial evidence tending to support the judgment, the case will not be reversed. Whether, therefore, the proviso contained in sec. 4824, "That whenever there is substantial evidence to support a verdict, the same shall not be set aside," applies to the power of this court in reviewing the findings of the trial court, can make no difference under the rule established and followed in this state.

It must be remembered that where the evidence is all oral or partly oral, this court does not have the same means of determining the credibility of the witnesses as the court below. In that court the judge heard the witnesses testify, observed their demeanor upon the witness-stand and possessed all those aids necessary to enable it to give due credit to every item of testimony, many of which cannot be shown in the record, and for that reason do not appear to this court. The trial judge may have concluded that all or some of the witnesses testifying on behalf of the appellant were not entitled to credit, and, upon the other hand, may have concluded that all or many of the witnesses testifying for respondent were entitled to credit; and where there is a conflict in such testimony, and the trial court makes a finding which has substantial evidence to support it, this court will not disturb the conclusions of the trial court.

The petition for rehearing is *denied.*