(No. 4471.   August 1, 1927.)

## EDWARD CRAWFORD, Respondent, v. STEVE INGLIN, Appellant.

[258 Pac. 541.]

WATER RIGHTS — EVIDENCE — PERMISSION TO CONSTRUCT DITCH No GRANT OF LAND—No RIGHT TO OVERFLOW LAND—RIGHT TO SIPHON —WASTE WATER—CHANGING LOCATION DITCH DOES NOT REQUIRE MAINTENANCE—LIVE WATER—TRIAL—CROSS-COMPLAINT—COSTS.

1.  Evidence merely of permission by land owner to construct ditch through his field to take up waste water thereon *held* not to sustain finding that he agreed to, or did, grant lands necessary for the ditch.

2.  Any right given plaintiff to construct and maintain ditch across defendant's land to collect and convey waste water therefrom gave no right to overflow the land.

3.  If for any reason ditch, which defendant permitted plaintiff to construct across defendant's land to collect and carry off

waste water, did not carry off all the water, defendant had right to permit the surplus water to escape from his land, and for such purpose to place siphon under the ditch.

4. Defendant, though permitting plaintiff to construct a ditch on defendant's land to take up waste water thereon, need not waste any into the ditch, but could use all his water, waste none of it, or apply it on other land.

5. Under C. S., sec. 5660, giving one across whose land a lateral ditch is constructed right to change its location at his expense, he need not thereafter maintain the ditch.

6. Plaintiff not pleading or proving right to carry live water through the ditch which defendant permitted him to construct on defendant's land to carry waste water therefrom, it was error to require defendant as a condition to changing location of the ditch to construct it so as to carry live water as well as waste water.

7. The court should by finding have disposed of issue raised by cross-complaint.

8. Under C. S., sec. 7218, requiring one who claims costs to file and serve a memorandum thereof within five days after notice of court's decision, costs may not be taxed on a memorandum filed before notice of the decision and never served.

APPEAL from the District Court of the Third Judicial District, for Ada County. Hon. Raymond L. Givens, Judge.

Action for injunction. Judgment for respondent. *Reversed and remanded.*

Fremont Wood & Dean Driscoll, for Appellant.

The defendant has a statutory right to change the plaintiff's ditch on his land, provided only that the change does not impede the flow of the water or otherwise injure any person using the ditch. (C. S., sec. 5660.)

Enjoining the defendant from moving the ditch, without finding that it would impede the water flow or injure any-

Publisher's Note.

See Costs, 15 C. J., sec. 440, p. 181, n. 19, 20.

Trial, 38 Cyc., p. 1968, n. 97.

Waters, 40 Cyc., p. 760, n. 66 New, p. 829, n. 97 New.

one, is, as in the case of failure to find on any other material point, fatal to the judgment. (*Nohrnberg v. Boley*, 42 Ida. 48, 246 Pac. 12.)

A judgment cannot be sustained where there is an entire lack of essential allegation to support it. (*Miller v. Prout*, 33 Ida. 709, 197 Pac. 1023; *Gile v. Wood*, 32 Ida. 752, 188 Pac. 36; *Van Sicklin v. Mayfield Land & L. Co.*, 41 Ida. 673, 241 Pac. 1022.)

Failure to find the size or capacity of the ditch to which plaintiff is entitled, or the amount of water he is entitled to carry in it, is a fatal defect. (*Last Chance Ditch Co. v. Sawyer*, 35 Ida. 61–68, 204 Pac. 654.)

Flooding and injuring defendant's land by plaintiff's ditch across it is a violation of C. S., secs. 5656 and 5657, and failure to find on defendant's allegations that the ditch was improperly constructed and improperly operated by carrying excess quantities of water is error.

It is essential that findings specify the amount of water to which plaintiff is entitled from defendant's land. (*Last Chance Ditch Co. v. Sawyer, supra.*)

The evidence does not disclose that plaintiff has any title to waste water from defendant's land by either conveyance or appropriation.

Waste water on private lands is not the subject of appropriation until it has left the boundaries of the owner and he has finally abandoned it. (Wiel on Water Rights, 1911 ed., pars. 56 and 57, pp. 54 and 55.)

Filing of a cost bill before filing of findings is a jurisdictional defect, and renders the judgment for costs void. (*Smith v. Faris-Kesl Const. Co., Ltd.*, 27 Ida. 407, 150 Pac. 25; *Steensland v. Hess*, 25 Ida. 181–185, 136 Pac. 1124.)

J. R. Good and J. T. Cook, for Respondent.

Parol licenses to take water or build a ditch being intended to be permanent, become irrevocable in equity after the licensee has acted upon the same, built his ditch or other works, and incurred large expense. (*Stoner v. Zucker*, 148 Cal. 516, 113 Am. St. 301, 7 Ann. Cas. 704, 83 Pac. 808;

*Miller v. Kern County Land Co.,* 154 Cal. 785, 99 Pac. 179; *Coventon v. Seufert,* 23 Or. 548, 32 Pac. 508; *Maple Orchard Grove & Vineyard Co. v. Marshall,* 27 Utah, 215, 75 Pac. 369; *Jensen v. Hunter,* 5 Cal. Unrep. 83, 41 Pac. 14.)

Where the trial court's findings of fact upon the affirmative case plead in the complaint are necessarily a complete negative of the case plead by the answer, such findings are sufficient. (*Stewart v. Stewart,* 32 Ida. 180, 180 Pac. 165.)

There is an abandonment of whatever runs waste after use. When the owner has made all the use of the water he wants, and lets the waste run off from ditches without intent to recapture, the waste is abandoned and the owner of the water right no longer has any claim upon it. (C. S., sec. 5562; Wiel's Water Rights in the Western States, 3d ed., sec. 37; *Dougherty v. Creary,* 30 Cal. 290, 89 Am. Dec. 116.)

The right to conduct excess water upon and across the land of another is an easement which may be obtained by prescription and the period of adverse possession whereby it may be acquired is that mentioned in secs. 4036, 4037 and 4039, Rev. Codes. (*Beasley v. Engstrom,* 31 Ida. 14, 168 Pac. 1145; *Smith v. Hawkins,* 110 Cal. 122, 42 Pac. 453.)

WM. E. LEE, C. J.—Appellant and respondent are adjoining land owners. Some years ago respondent constructed a ditch on the land now owned by appellant and one Emery for the purpose of carrying "waste water" from a draw on appellant's land to certain of respondent's land for irrigation. The ditch, as now constructed, extends from an irrigation ditch on respondent's land through the draw, thence on through the lands of appellant and Emery to another part of respondent's land, and, the evidence shows, has been used for conveying live water from the irrigation lateral as well as collecting and conveying waste water. Because the ditch interfered with the use of his land and overflow water rendered certain of his land unfit for cultivation, appellant sought the permission of respondent to change the course of the ditch. The request

being refused, appellant placed a siphon under the ditch, where it crossed the draw, in order to permit the overflow water, or that which stood on the upper side of the ditch, to escape from his land.

Respondent commenced this action to enjoin appellant from maintaining the siphon, otherwise interfering with the flow of water into and in the ditch, and quieting his title to the ditch and to the waste water. A temporary injunction was issued, the cause was tried without a jury and findings of fact and conclusions of law were made in favor of respondent, on which a decree was entered.

Among other things, the complaint alleged that respondent had diverted and appropriated fifty inches of waste water which "flowed across the land of defendant . . . . into a draw or low land," by means of drains and ditches, and applied said waste water to a beneficial use; that respondent entered into a parol agreement with Clawson, who then owned the land, under which Clawson agreed, in consideration of the construction of the ditch to carry off the waste water, to "grant and did grant" respondent all the land necessary for the construction of the ditch. It was further alleged that appellant had placed a siphon under the ditch and refused to remove the same, to the damage of respondent in no stated amount. Appellant denied specifically the allegations of the complaint, set up certain affirmative defenses, an offer to change the ditch to another part of his land, and, by cross-complaint, sought damages for the overflow of water on his land.

The decree directs "judgment against defendant . . . . excepting only the defendant is authorized . . . . to modify and change plaintiff's ditch" in a designated manner "on defendant's own lands and entirely at the expense of defendant, and it is further decreed that the defendant is bound to maintain, to perpetuate and keep all of that portion of said ditch so constructed by him in a good and proper manner perpetually." The temporary injunction (which is not in the record) is made permanent, except as to the permitted change in the location of the ditch.

[1] The only evidence of the arrangement between respondent and Clawson for the construction of the ditch was testified to by respondent's son, as follows:

". . . . and father asked me one night when I was going up there, I was going to a party at Clawson's house, and he asked me to speak to Charley about making—about him making a ditch up through this field to take up this waste water, so that he could get it over on the south side of his high land. I asked Mr. Clawson about it and he said that was all right, to go ahead and do it.

"Q. Was the question of waste water discussed between you and Clawson at that time?

"A. I don't remember that it was discussed, other than by making the statement that we wanted to make this ditch to pick up waste water."

This evidence is wholly insufficient to sustain the court's finding that Clawson agreed to or did grant the lands necessary for the construction or maintenance of the ditch, and shows only permission from Clawson to construct "a ditch up through this field to take up this waste water, so that he (Crawford) could get it over on the south side of his high land." However, the case was tried upon the theory that respondent, by the permission to construct the ditch, together with its construction and maintenance and use, had acquired a right to maintain and use it to convey whatever water was wasted into it. [2] The right to maintain this ditch and convey therein whatever water wasted into it did not give respondent the right to transport "live" water in the ditch, or commingle live and waste water therein and thereby, or for any reason, overreach the capacity of the ditch and overflow appellant's lands. [3] If, therefore, by reason of the incapacity of the ditch, because of a failure to keep it in proper repair, or an improper grade, or the flowing therein of live water, the ditch did not carry off all the water, of whatsoever nature, appellant had the undoubted right to permit the surplus water to escape from his lands, and, to convey such surplus water as the ditch would not collect and carry, he acted within his rights in

placing the siphon under the ditch. The permission given by Clawson was not to flood the lands now owned by appellant, and no right other than that given by Clawson has been proven.

It must not be understood that we pass on the question of whether respondent had or had not the right to run "live" water through the ditch. He neither alleged nor proved any right to convey live water but bases his right to maintain and operate the ditch solely on the permission of Clawson "to take up this waste water."

[4] In the conclusions of law, it is stated that "the defendant is enjoined from interfering with plaintiff's ditch or with the collection in plaintiff's ditch of any of the waste water or interfering with the flow into plaintiff's ditch as it has heretofore naturally flowed therein of any waste water finding its way therein." This conclusion goes too far; it is not justified from the facts. There is no evidence whatever of a grant of any water from Clawson. The most that can be said, from the testimony of respondent's son, is that Clawson permitted certain of his water to waste and to be carried away by respondent. Clawson did not agree to permit water, to which he was entitled, to waste for any definite time. While respondent, under the issues here presented, would seem to be entitled to all the water that collected in the ditch, appellant cannot be required to waste water into the ditch. He can use all his water, waste none of it, or apply it on other lands, and thereby prevent its flow into the ditch. (*Sebern v. Moore,* 44 Ida. 410, 258 Pac. 176 (filed June 27, 1927); 1 Wiel on Water Rights, sec. 56 et seq.; *Davis v. Martin,* 157 Cal. 657, 108 Pac. 866. See, also, *Gerber v. Nampa etc. Irr. Dist.,* 16 Ida. 1, 100 Pac. 80 (concurring opinion by Sullivan, C. J., pp. 29–31); *Nampa & Meridian Irr. Dist. v. Petrie,* 37 Ida. 45, 223 Pac. 531).

[5] The court refused appellant's request to permit him to change the ditch so that it would follow "the quarter section line," but did authorize a change in the location of the ditch on condition that appellant was required "to main-

tain, to perpetuate and keep all that portion of said ditch so constructed by him in a good and proper manner perpetually." If this is such a lateral ditch as is referred to in C. S., sec. 5660, with respect to which the findings are silent, it would seem that appellant may change it at his own expense, so long as such change does not prevent or impede the flow of the water into or in the changed ditch or injure respondent, but we know of no power to require such a ditch, when changed, to be perpetually maintained by the land owner.

[6] Appellant also complains that the court erred in requiring, as a condition to changing the ditch, that it be so constructed as to "carry plaintiff's *live water* and also plaintiff's *waste water.*" Since, as heretofore stated, no right to carry live water through the ditch was alleged or proven, and, although the evidence shows that the ditch has been used at times for that purpose, if respondent had no right to carry live water through the ditch, appellant should not be required to so construct any new or changed ditch as to convey live water.

[7] No finding was made on appellant's cross-complaint for damages for the flooding of his land. This was error. The court should have determined the issue raised by the cross-complaint. (*Carson v. Thews,* 2 Ida. 176, 9 Pac. 605; *Wood v. Broderson,* 12 Ida. 198, 85 Pac. 490; *Later v. Haywood,* 14 Ida. 45, 93 Pac. 374; *Berlin Machine Works v. Dehlbom Lumber Co.,* 29 Ida. 494, 160 Pac. 746.)

[8] In the trial court, respondent's costs were taxed against appellant. The taxing of costs is governed by statute. C. S., sec. 7218, requires one who claims costs to file and serve a memorandum thereof within five days *after* "notice of the decision of the court." The memorandum of costs was filed more than ten days *prior* to notice of the decision and was not served. Respondent failed to serve or file the memorandum of costs within the time provided by statute, and the court erred in taxing costs against appellant. (*Steensland v. Hess,* 25 Ida. 181, 136 Pac. 1124; *State ex rel. Riddell v. District Court,* 33 Mont. 529, 85

Pac. 367; *Houghton v. Barton,* 49 Utah, 611, 165 Pac. 471; *Sellick v. De Carlow,* 95 Cal. 644, 30 Pac. 795.) No objection is made by respondent to the manner in which this question is presented for consideration.

The judgment is reversed and the cause remanded to the trial court, with directions to grant a new trial. Costs to appellant.

Taylor and T. Bailey Lee, JJ., concur.

Givens, J., disqualified.

BUDGE, J., Dissenting.—As to the matter of taxing costs against appellant in the trial court, the views expressed in the majority opinion are correct. With the remaining portion of the opinion I am not in accord. The judgment entered by the trial court was correct, and should be upheld.